UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gregory M. Crow and Brenda Crow,

      Plaintiffs,

v.                                                 Civ. No. 04-3877 (JNE/RLE)
                                                 ORDER

Wal-Mart Stores, Inc.,

      Defendant.

---

Andrew R. Peterson, Esq., Cope & Peterson, Ltd., appeared for Plaintiffs Gregory M. Crow and Brenda Crow.

Jerome D. Feriancek, Esq., Thibodeau, Johnson & Feriancek, PLLP, appeared for Defendant Wal-Mart Stores, Inc.

---

Gregory and Brenda Crow brought this negligence action in state court against Wal-Mart Stores, Inc., (Wal-Mart) after a truck Mr. Crow was driving struck a sign in the parking lot of Wal-Mart's store in Bemidji, Minnesota. Wal-Mart removed the action from state court. The case is before the Court on Wal-Mart's Motion for Summary Judgment and the Crows' Motion to Exclude the Expert Opinions of Donald Anderson. For the reasons set forth below, the Court grants Wal-Mart's motion and denies as moot the Crows' motion.

## I.    BACKGROUND

On August 16, 2002, at approximately 10 p.m., Mr. and Mrs. Crow and their son, Christopher, completed their shopping at Wal-Mart's store in Bemidji. They returned to their truck in the store's parking lot. Mr. Crow took the driver's seat, Christopher sat in the front-passenger's seat, and Mrs. Crow sat between them. It was dark and raining. Mr. Crow turned on the truck's headlights and windshield wipers. He backed the truck out of its parking spot and followed two or three vehicles toward a gas station across the parking lot. The car in front of the

Crows' truck stopped at the end of a row of parking spots and turned left.  While Mr. Crow was making the same turn, the front-left side of the Crows' truck struck a pedestrian-crossing sign.

The pedestrian-crossing sign struck by the Crows comprises two signs mounted at the top of a dark green metal post.  Both signs' backgrounds are yellow.  One sign contains a black silhouette of a pedestrian; the other contains "PED XING" in black type.  Below the surface of the parking lot, the metal post is anchored in concrete.  Above the parking lot's surface, a pipe filled with concrete surrounds the metal post.  The pipe's diameter is approximately four inches, the pipe is approximately three feet tall, and the pipe is painted yellow.  The metal post extends several feet above the yellow pipe.  The pedestrian-crossing sign appears at the end of a row of parking spaces marked by yellow paint.  Closely spaced, parallel lines of yellow paint appear on the parking lot in the area immediately surrounding the pedestrian-crossing sign.

According to Mr. Crow's deposition testimony, he followed the car because he thought it would reveal a safe route to exit the parking lot.  He testified the yellow lines that surrounded the pedestrian-crossing sign "were not visible in the headlights" because "the vehicle was in front of [him] obstructing" and because rain had fallen on the parking lot, which consisted of "brand new pavement, which is super black."  Mr. Crow also stated that the pedestrian-crossing sign was incapable of being seen because:  (1) its metal post was painted dark green and did not contain reflectors; (2) he approached from its side; and (3) the yellow pipe was too short.  Asked whether anything other than its height prevented him from seeing the yellow pipe, he stated:  "I don't know.  It was out of the sight of vision of my lights.  I could not see it, and it was obvious the person in front of me didn't see it either."  The car that the Crows followed did not hit the pedestrian-crossing sign.

The Crows brought this action alleging that the pedestrian-crossing sign was "hidden" and that the accident resulted from Wal-Mart's negligence. Asserting that the pedestrian-crossing sign was obvious, Wal-Mart now moves for summary judgment.

## II. DISCUSSION

**A.  Wal-Mart's motion**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"Any legal analysis of an action brought against a landowner alleging negligence must begin with an inquiry into whether the landowner owed the entrant a duty. Generally, the existence of a legal duty is a question for the court to determine as a matter of law." *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn. 2001) (citation omitted). "While a landowner generally has a continuing duty to use reasonable care for the safety of all entrants, this duty is not absolute." *Id.* at 319. The Minnesota Supreme Court has adopted the rule set forth in the Restatement

3

(Second) of Torts § 343A (1965), which states: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Louis*, 636 N.W.2d at 319. Whether the danger posed by a condition is known or obvious is a question of fact. *Olmanson v. LeSueur County*, 693 N.W.2d 876, 881 (Minn. 2005). Whether the possessor could anticipate the danger despite the knowledge or obviousness is also a question of fact. *Id.*

The parties first dispute whether the pedestrian-crossing sign was obvious. "[A] condition is not obvious unless both the condition and the risk are apparent to and would be recognized by a reasonable person in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Engleson v. Little Falls Area Chamber of Commerce*, 362 F.3d 525, 528 (8th Cir. 2004); *see Louis*, 636 N.W.2d at 321. Accordingly, the test for what constitutes an obvious danger is objective; the question is not whether the injured party actually saw the danger, but whether the danger was in fact visible. *Engleson*, 362 F.3d at 528; *Louis*, 636 N.W.2d at 321.

The Crows assert the pedestrian-crossing sign was not visible because it was dark and raining when the accident occurred and because they approached it from its side. They rely on *Reinertson v. Cub Foods, Inc.*, No. C7-90-1390, 1990 WL 178510 (Minn. Ct. App. Nov. 20, 1990). In that case, the plaintiffs drove into a sign post in the middle of a parking lot. *Id*. at *1. The accident occurred when it was dark and snowing lightly. *Id*. The district court held the sign post was obvious as a matter of law and the Minnesota Court of Appeals reversed. *Id*. To support its holding, the court of appeals relied on a traffic engineer's affidavit that stated the sign post would be "only marginally visible, if at all," to a person approaching from its side "at night

and/or in inclement weather." *Id*. The Court does not find *Reinertson* persuasive in this case. *See State ex rel. Hatch v. Employers Ins. of Wausau*, 644 N.W.2d 820, 828 (Minn. Ct. App. 2002) ("We remind courts that our unpublished opinions are '[a]t best' of persuasive value and are not controlling.").

*Reinertson* referred in general terms to the sign post's placement and surroundings, 1990 WL 178510, at *2 ("The sign post here was located in the middle of a parking lot, in an area where it was expected there would be traffic on a regular basis. The markings surrounding the sign post and the fire lane were allegedly dusted with snow."), but provided almost no information about the sign post itself. No information about the sign post's diameter, height, or color appeared. Without a description of the sign post itself, the Court cannot accord *Reinertson* persuasive value. *See Vlahos v. R&I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n.3 (Minn. 2004) ("[W]e pause here to stress that unpublished opinions of the court of appeals are not precedential. The danger of miscitation is great because unpublished opinions rarely contain a full recitation of the facts. Unpublished decisions should not be cited by the district courts as binding precedent." (citations omitted)).

In asserting the pedestrian-crossing sign was not visible because they approached it from its side at night during a rainstorm, the Crows fail to account for the fact that the sign's base consists of a yellow pipe that stands three feet tall and four inches wide. At his deposition, Mr. Crow testified that it was raining but not "to the point where you should pull over or anything like that." Headlights would illuminate the yellow pipe even if the faces of the signs could not be seen due to the angle of approach. Viewed in the light most favorable to the Crows, the record reveals that a reasonable person, who exercised ordinary perception, intelligence, and

judgment, in the Crows' position would have recognized the pedestrian-crossing sign and the risk it posed. The pedestrian-crossing sign was obvious.

The parties next dispute whether Wal-Mart could have anticipated the harm the Crows experienced despite the pedestrian-crossing sign's obviousness. The Crows assert Wal-Mart knew that its customers struck numerous posts and signs in its parking lots before the Crows' accident. They rely on the deposition testimony of Andrew Abello, the Bemidji store's manager, and a list of property damage claims involving vehicles hitting signs in parking lots of Wal-Mart stores in the Eighth Circuit from August 16, 1999, to August 16, 2002. Abello testified that automobiles, motorcycles, or bicycles struck signs or poles in the Bemidji store's parking lot. According to Abello, the accidents did not involve pedestrian signs. The list includes approximately seventy claims. The Crows have not demonstrated that the claims on the list are sufficiently similar to their accident. Accordingly, the Crows cannot rely on this evidence to demonstrate Wal-Mart should have anticipated their collision with the pedestrian-crossing sign despite the sign's obviousness. *See Grogg v. Mo. Pac. R.R. Co.*, 841 F.2d 210, 214 (8th Cir. 1988); *Hicks v. Six Flags Over Mid-America*, 821 F.2d 1311, 1315-16 (8th Cir. 1987).

In this case, the pedestrian-crossing sign appears at the end of a row of parking spots marked by yellow paint. Closely-spaced parallel lines of yellow paint appear on the parking lot in the area immediately surrounding the pedestrian-crossing sign. Viewing the record in the light most favorable to the Crows, no reasonable finder of fact could conclude that Wal-Mart should have anticipated that reasonable persons would encounter the pedestrian-crossing sign despite its obviousness. *See Sperr ex rel. Sperr v. Ramsey County*, 429 N.W.2d 315, 318 (Minn. Ct. App. 1988) (holding landowner could not reasonably anticipate its business invitees would run into branches of a tree where neither sidewalks nor pathways lead to the tree).

Because the pedestrian-crossing sign was obvious and Wal-Mart could not have anticipated that reasonable persons would encounter the sign despite its obviousness, Wal-Mart had no duty to warn the Crows of the pedestrian-crossing sign. Wal-Mart is therefore entitled to summary judgment on the Crows' negligence claim. *See Engleson*, 362 F.3d at 529-30.

**B.    The Crows' motion**

The Crows move to exclude the opinions of Donald Anderson, an expert retained by Wal-Mart. In a Report and Recommendation dated October 11, 2005, the magistrate judge recommended that the Crows' motion be granted. Neither Wal-Mart nor the Crows relied on Anderson's opinions to support or oppose Wal-Mart's motion for summary judgment. Having concluded that summary judgment in Wal-Mart's favor is warranted, the Court declines to adopt the Report and Recommendation and denies as moot the Crows' motion to exclude Anderson's opinions.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Wal-Mart's Motion for Summary Judgment [Docket No. 74] is GRANTED.

2. The Crows' Complaint is DISMISSED WITH PREJUDICE.

3. The Crows' Motion to Exclude the Expert Opinions of Donald Anderson [Docket No. 99] is DENIED AS MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  November 18, 2005

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge